1

2

3

4

5

6

7                           UNITED STATES DISTRICT COURT

8                           EASTERN DISTRICT OF CALIFORNIA

9

10   CORNEL JACKSON,                          Case No. 1:23-cv-00149-KES-HBK (PC)

11                  Plaintiff,                ORDER GRANTING DEFENDANTS'
                                              REQUEST FOR JUDICIAL NOTICE
12          v.
                                              (Doc. No. 16-2)
13   H. MARLEY, et al.,
                                              FINDINGS AND RECOMMENDATIONS TO
14                  Defendants.               GRANT IN PART AND DENY IN PART
                                              DEFENDANTS' MOTION TO DISMISS[1]
15
                                              (Doc. No. 16)
16

17          Pending before the Court is Defendants Hermina Marley, Lt. Jim Followill, Jayson Quick,

18   Maria Rivera, Dominic Ramos, and Daisy Cortes' Motion to Dismiss filed on July 16, 2024.

19   (Doc. No. 16, "Motion").  Included within Defendants' Motion is a Request for Judicial Notice.

20   (Doc. No. 16-2).  Plaintiff filed an untimely Opposition (Doc. No. 17), and Defendants filed a

21   Reply (Doc. No. 18).  For reasons set forth below, the undersigned grants the Request for Judicial

22   Notice and recommends the district court grant in part and deny in part Defendants' Motion to

23   Dismiss.

24                                    **BACKGROUND**

25          Plaintiff initiated this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983

26   while a pretrial detainee in the Madera County Jail ("MCJ").  (Doc. No. 1).  Plaintiff is

27   _____

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302
     (E.D. Cal. 2023).

proceeding on his First Amended Complaint ("FAC") as screened.  (Doc. Nos. 9, 11, 12).  The FAC alleges the following facts, which the Court must accept as true at this stage of the proceedings.

In August 2022, the state court appointed Plaintiff new counsel for his underlying criminal case.  (Doc. No. 8 at 3).  His new counsel was approved for "clearance" to MCJ for "contact consultations" with Plaintiff.  (*Id*.).  Defense counsel's office is located in Jackson, California.[2] (*Id*. at 4).  On or about September 18, 2022, counsel arrived at the jail to meet with Plaintiff but Defendants Marley and Followill told counsel that Plaintiff was unavailable for a visit because he was eating lunch.  (Doc. No. 8 at 5).  Plaintiff's counsel was directed to return in two hours, which he did, at which time Defendants Rivera, Cortes, and Ramos denied him access to the facility, purportedly on Defendant Quick's order.  (*Id*. at 5-6).  Defendants Rivera, Ramos, and Cortes allegedly gave no other reason for denying Plaintiff's counsel access to MCJ.  (*Id*. at 6).  Plaintiff's attorney was again denied access to Plaintiff by Defendants Marley, Rivera, and Cortes on October 4, October 27, November 11, November 28, December 9, and December 28, 2022.  (*Id*. at 5, 12-17).  In each of those instances, the Defendants initially denied Plaintiff's defense counsel access to enter the MCJ, asked him to return two hours later, and then upon his return denied him access again, allegedly at the direction of Defendant Quick.  (*Id*.).  Plaintiff's attorney asked on multiple occasions to speak with the watch commander, but his requests were denied.  (*Id*. at 5).  Plaintiff also alleges he could only call counsel on a recorded line and his calls were disconnected after 120 seconds, or his calls to his attorney were otherwise blocked.  (*Id*. at 4).  Defense counsel informed Plaintiff that due to his inability to have contact with him, he was forced to request a continuance of Plaintiff's criminal trial for six to twelve months.  (*Id*. at 4).

The FAC alleges that these actions were taken by Defendants in retaliation for Plaintiff filing a lawsuit alleging conspiracy, denial of access to courts, and interference with Plaintiff's legal mail in 2019 against Defendants Marley, Followill, Ramos, and Quick.[3]  (*Id*. at 7).

Finally, while Plaintiff was prevented from seeing his attorney, other attorneys were able

---

[2] Jackson, California is located approximately 150 miles from MCJ.
[3]  *Jackson v. Quick*, E.D. Cal. Case No. 1:19-cv-00591.

1    to meet with other pretrial detainees at MCJ without incident. [4]  (Doc. No. 8 at 13).  Further, no

2    prison official provided a reason to justify why Plaintiff was denied access to his attorney while

3    other detainees were permitted to have contact visits from their counsel.

4        Liberally construed, the Court found the FAC alleged the following claims against

5    Defendants Quick, Ramos, Marley, Rivera, Cortes, and Followill: (1) First Amended retaliation;

6    (2) First Amendment right to communication with counsel; (3) Sixth Amendment access to

7    counsel; and (4) Fourteenth Amendment right to equal protection.  (Doc. No. 11 at 1).

8        Defendants' Motion seeks dismissal of Plaintiff's FAC under Rule 12(b)(6) on two

9    grounds: (1) Plaintiff's FAC fails to allege any cognizable constitutional claim; and (2)

10    Defendants are entitled to qualified immunity on Plaintiff's Sixth Amendment and Fourteenth

11    Amendment claims because they did not violate any of Plaintiff's clearly established rights.  (*See*

12    *generally* Doc. No. 16-1).[5]  Specifically, Defendants contend that Plaintiff's Sixth Amendment

13    right to counsel claim for damages is barred by binding Ninth Circuit case law (*id*. at 5-6); that

14    section 1983 is an improper vehicle for asserting a Sixth Amendment ineffective assistance of

15    counsel claim, which can only be brought through a *habeas corpus* action or a direct appeal (*id*. at

16    6-7); that Plaintiff has failed to allege facts showing the requisite intent by Defendants or

17    sufficient prejudice to a non-frivolous legal claim to sustain a Sixth Amendment access to counsel

18    claim (*id*. at 7-9) or First Amendment right to communication with counsel claim (*id*. at 9-10);

19    that Plaintiff's First Amendment retaliation claim fails because the FAC does not sufficiently

20    allege a causal connection between Plaintiff's protected conduct and Defendants' purported

21    adverse actions nor that their actions had a chilling effect on Plaintiff (*id*. at 10-11); and finally

22    that Plaintiff's equal protection claims fail because class-of-one claims are unavailable to

23    challenge arbitrary treatment of prisoners, and because, even if cognizable, the FAC fails to allege

24    facts supporting such a claim (*id*. at 11-14).

25

---

26    [4] Plaintiff's Opposition appears to contradict this assertion.  In it, Plaintiff asserts that he is aware of at least two other inmates that were denied contact visits with their attorneys.  (Doc. No. 17 at 4-5).

27    [5] Defendants also suggest that Plaintiff's motive in filing this action is a ruse to disrupt his underlying criminal case.  (Doc. No. 16-1 at 3:6-8; 3:16).  The Court makes no findings as to Plaintiff's motive at this

28    stage of the proceedings.

1    In his Opposition, which was untimely filed on August 29, 2024,[6] Plaintiff insists that the

2    claims alleged in the FAC are cognizable, largely reasserting or referencing the facts in the First

3    Amended Complaint and citing various legal authorities that he contends refute Defendants'

4    arguments.  (*See generally* Doc. No. 17).  Plaintiff insists that he has suffered prejudice in his

5    criminal case because of his inability to meet with his attorney, including unspecified

6    consequences of the delayed proceedings and experiencing "fear, stress . . . mental anguis[h]" and

7    a "depressive state of mind."  (*Id*. at 11).  He states he has "raised facts supporting a reasonable

8    inference that Defendants" intended to deprive Plaintiff of his constitutional rights.  (*Id*.).

9    Plaintiff claims that Defendant Quick has been demoted because of misconduct, including

10   denying other detainees' access to counsel, which is the subject of at least one other lawsuit that

11   recently settled.  (*Id*. at 4-5).[7]  Plaintiff argues that materials that emerge in discovery, including

12   surveillance video and documents, will support all his claims.  (*Id*. at 4, 12).

13   In their Reply, Defendants assert first, that the Court should disregard Plaintiff's response

14   because it is "inexcusably untimely."  (Doc. No. 18 at 1).  As to the substance of the Opposition,

15   Defendants contend that Plaintiff's arguments consist largely of threadbare recitals of the

16   elements of his claims, vague and conclusory statements, and inapposite legal citations.  (*Id*. at 2,

17   5-7).  Defendants ask the Court to strike and disregard all new allegations made in the

18   Opposition, including assertions as to Defendant Quick and alleged lawsuits against him,

19   psychological harm Plaintiff suffered as a result of the delays in his criminal case, and statements

20   as to the knowledge of Defendants Followill and Marley regarding when Plaintiff takes his lunch.

21   (*Id*. at 4-5).

22   **A.  Plaintiff's Untimely Opposition**

23   Because Plaintiff's opposition was untimely, the court may disregard it under Local Rule

24   230(l).  Considering Plaintiff's pro se status and the public interest in having cases resolved on

25   the merits, however, the Court elects to consider Plaintiff's arguments.  *See Bumagat v. Shillinger*,

---

[6] Plaintiff's opposition was due to be delivered to correctional officials for mailing no later than August 6,
2024.  *See* Local Rule 230(l).  (E.D. Cal. 2023).

[7] While the Court acknowledges these new allegations made in Plaintiff's Opposition, as noted below, the
Court largely disregards them for purposes of analyzing Defendant's Motion.

2019 WL 1382495, at *5 n.3 (E.D. Cal. Mar. 27, 2019), report and recommendation adopted, 2019 WL 2465138 (E.D. Cal. June 13, 2019).

**B.  New Factual Assertions Made in Plaintiff's Opposition**

In his Opposition to Defendants' Motion, Plaintiff makes several new assertions regarding Defendant Quick's employment status, other federal cases alleging interference with counsel claims against Defendant Quick, Plaintiff's suffering psychological harm from the delay to his criminal case, and Defendants' knowledge regarding his lunch breaks.  (*See, e.g.*, Doc. No. 17 at 4-5).  As a general matter, the Court does not find these new assertions to be relevant or material to the issues in this Motion.  Moreover, it is well-settled that a plaintiff "may not amend his allegations through facts raised in opposition to a motion to dismiss."  *King v. Navy Fed. Credit Union*, 699 F. Supp. 3d 864, 870 (C.D. Cal. 2023).  Accordingly, the Court largely disregards these additional allegations made in Plaintiff's Opposition.

# REQUEST FOR JUDICIAL NOTICE

Attached to Defendants' Motion is a Request for Judicial Notice.  (Doc. No. 16-2).  Although the motion to dismiss stage typically does not involve considering matters outside the pleadings, the court may consider items that are properly judicially noticed.  *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1120 (N.D. Cal. 2009).  Defendants request the Court take judicial notice of six cases filed by Plaintiff[8] in the Eastern District of California and "all documents in the Court record related thereto":

1. *Jackson v. Quick, et al*. Case No. 1:19-cv-01591-EPG.

2. *Jackson v. Khalib, et al*. Case No. 1:20-cv-01567-KES-SKO

3. *Jackson v. County of Madera, et al*. Case No. 1:22-cv-00069-ADA-EPG

4. *Jackson v. Perez et al*. Case No. 1:24-cv-00034-KES-HBK

5. *Jackson v. Rivera et al*. Case No. 1:24-cv-00261-KES-BAM

---

[8] The Motion does not explain the relevance of these cases nor specify that they were filed by Plaintiff (the motion cites them by case number only), but they are referenced in Defendants' Brief in Support as proof that Plaintiff is "a highly litigious individual" who has filed these lawsuits with the goal of "undermining his criminal trial related to the murder of a two-year-old child."  (Doc. No. 16-1 at 2).  The Court does not consider Plaintiff's litigiousness or motivation relevant for purposes of determining whether the FAC states a claim.

1        6. *Jackson v. Pouge et al*. Case No. 1:24-cv-00585-JLT-EPG

2            Federal Rule of Evidence 201 permits a court to take judicial notice of facts that are "not

3    subject to reasonable dispute" because they are either "generally known within the trial court's

4    territorial jurisdiction," or they "can be accurately and readily determined from sources whose

5    accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  Courts judicially notice other

6    court proceedings "if those proceedings have a direct relation to the matters at issue."  *United*

7    *States ex. Rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir.

8    1992) (citations and internal quotation marks omitted); *Trigueros v. Adams*, 658 F.3d 983, 987

9    (9th Cir. 2011).  However, a court may not take judicial notice of findings of facts from another

10   case. *Walker v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006).  The Court may take

11   judicial notice on its own or at the request of any party, and "must take judicial notice if a party

12   requests it and the court is supplied with the necessary information."  Fed. R. Evid. 201(c).

13           Here, Defendants ask the Court to take judicial notice of six other cases Plaintiff has filed

14   against the County of Madera and its employees.  The existence of these cases is not subject to

15   reasonable dispute, and they are sufficiently related to warrant judicial notice given that they have

16   all been filed by Plaintiff related to his detention at MCJ and several of the cases name

17   Defendants who are also named in this action.  Plaintiff does not challenge Defendants' Request.

18   (*See* Doc. No. 17).  And because Defendants have provided the necessary information to establish

19   the propriety of judicial notice, the Court must grant the request under Federal Rule of Evidence

20   201(c).

21                               **APPLICABLE LAW AND ANALYSIS**

22           **A.  Rule 12(b)(6)**

23           A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "tests the

24   legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir.

25   2011).  Dismissal for failure to state a claim is proper if there is a "lack of a cognizable legal

26   theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Id*.; *see also*

27   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (to survive a motion to dismiss, the

28   complaint must have sufficient facts to state a facially plausible claim to relief).  In deciding a

1    motion under Rule 12(b)(6), the court accepts as true all well-pled factual allegations in the

2    complaint and determines whether the factual allegations are sufficient to state a right to relief

3    above the speculative level. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Nw. Envtl. Def. Ctr.*

4    *v. Brown*, 640 F.3d 1063, 1070 (9th Cir. 2011) (court accepts as true all material allegations in the

5    complaint, as well as any reasonable inferences to be drawn from them).

6          The fact that the Court found Plaintiff's claims plausible at the screening stage does not

7    foreclose the possibility of granting a motion to dismiss. *See Forte v. Hughes*, 2014 WL

8    5603788, *1 (E.D. Cal. Nov. 3, 2014) (noting a screening order does not rule on the merits of the

9    proposed action but instead evaluates whether the claim is cognizable and is not a substitute for a

10   12(b)(6) motion); *see also Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. March 28,

11   2007) ("a defendant's right to bring a motion to dismiss is not foreclosed by the issuance of a sua

12   sponte screening providing that the prisoner has stated a claim").

13         Where a motion to dismiss is granted, a district court must decide whether to grant leave

14   to amend.  Courts are instructed to apply Rule 15 with extreme liberality.  *Eminence Capital, LLC*

15   *v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted); *Winebarger v.*

16   *Pennsylvania Higher Educ. Assistance Agency*, 411 F. Supp. 3d 1070, 1082 (C.D. Cal. 2019).

17   Only where leave to amend would be futile, because "the allegation of other facts consistent with

18   the challenged pleading could not possibly cure the deficiency," should leave to amend be denied.

19   *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

20         **1.  First Amendment Retaliation Claim Against All Defendants**

21              Applicable Law

22         The First Amendment guarantees a prisoner the right to file a grievance or access the

23   courts.  *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Brodheim v. Cry*, 584 F. 3d 1262,

24   1269 (9th Cir. 2009).  Retaliating against an inmate for exercising this right is "prohibited as a

25   matter of 'clearly established law." *Brodheim*, 584 F.3d at 1269 (citations omitted).  To state a

26   claim for First Amendment retaliation, a plaintiff must allege five elements: (1) he engaged in

27   protected activity; (2) the state actor took an adverse action against the plaintiff; (3) a causal

28   connection between the adverse action and the protected conduct; (4) the defendant's actions

1    would chill or silence a person of ordinary fitness from protected activities; and (5) the retaliatory

2    action did not advance a legitimate correctional goal.  *Chavez v. Robinson*, 12 F.4th 978, 1001

3    (9th Cir. 2021) (quoting *Rhodes v. Robinson,* 408 F.3d 559, 567-68 (9th Cir. 2005)).  To raise a

4    triable issue, a plaintiff must come forward with "either direct evidence of retaliatory motive or at

5    least one of the three general types of circumstantial evidence"— (1) proximity in time between

6    the protected speech and the alleged retaliatory act; (2) expressed opposition; or (3) other

7    evidence that the reasons proffered for the adverse action are false or pretextual.  *Allen v. Iranon*,

8    283 F.3d 1070, 1077 (9th Cir. 2002); *see also Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th

9    Cir.2003); *McCollum v. Ca. Dep't of Corr. And Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011).  Mere

10   speculation that a defendant acted out of retaliation is not sufficient.  *Wood v. Yordy,* 753 F.3d

11   899, 905 (9th Cir. 2014) (citing cases).

12                    <u>Analysis</u>

13        Plaintiff's FAC alleges that Defendants Quick, Ramos, Marley, Rivera, Cortes, and

14   Followill retaliated against him because he filed a prior federal suit against Defendants Quick,

15   Ramos, Marley, and Followill for conspiracy, denial of access to courts, and interference with

16   Plaintiff's legal mail.  (Doc. No. 8 at 7).  Defendants argue that Plaintiff's claim is conclusory and

17   lacks factual allegations to support the second and fourth elements of a retaliation claim.  (Doc.

18   No. 16-1 at 10).

19        Defendants assert that the mere fact of Plaintiff having filed a lawsuit against some of

20   them in 2019 is insufficient to establish that their actions in 2022 were driven by a retaliatory

21   motive.  (*Id*.).  They contend this amounts to mere speculation.  (*Id*.).  Plaintiff counters that

22              the time sequence of Plaintiff's legal action on Madera County Jail
               and the retaliation as described in this action is proof and a showing
23              that each Defendant purposely intervened on Plaintiff's rights.  It
               was no coincidence that Plaintiff's filing suits on the Madera
24              County Jail and its employees was cause for Defendants in this
               action to harass Plaintiff, deny him and retaliate by restricting legal
25              visits and phone calls with Plaintiff's trial attorney.

26   (Doc. No. 17 at 9-10).

27        Proximity in time between protected First Amendment conduct and adverse action can

28   support an inference of retaliatory motive, though by itself it is generally insufficient.  *See Pratt v.*

                                    8

1    *Rowland*, 65 F.3d 802, 808 (9th Cir. 1995); *see also Garcia v. Sleeley*, 2019 WL 2234789, at *9

2    (S.D. Cal. May 22, 2019) ("circumstantial evidence of timing, without more, is insufficient" to

3    demonstrate retaliatory motive), report and recommendation adopted, 2019 WL 3887340 (S.D.

4    Cal. Aug. 19, 2019), aff'd sub nom. *Garcia v. Seeley*, 854 F. App'x 882 (9th Cir. 2021).  The

5    Ninth Circuit found in *Pratt* that timing, without evidence that defendants were aware of the

6    protected conduct, is insufficient to establish retaliatory motive.  *Pratt*, 65 F.3d at 808.

7         The mere fact that Plaintiff filed a lawsuit against Defendants Quick, Ramos, Marley and

8    Followill three years before the incidents giving rise to the FAC does not by itself create an

9    inference of retaliatory motive.  However, the Court notes that in the 2019 lawsuit, *Jackson v.*

10   *Quick* ("the *Quick* case"), Defendants' Motion for Summary Judgment ("MSJ") was pending at

11   the time Plaintiff alleges they began their retaliatory conduct in September 18, 2022, and on

12   October 13, 2022, the assigned magistrate judge issued Findings and Recommendations to grant

13   in part and deny in part the MSJ, effectively permitting Plaintiff's case to proceed to trial.  (*See*

14   Doc. Nos. 108, 123, E.D. Cal. Case No. 1:19-cv-01591-EPG).  Plaintiff's FAC alleges that his

15   attorney was denied entry to MCJ on five occasions in the two months immediately following this

16   decision.  (*See* Doc. No. 8).  These events overlap closely with the dates when Plaintiff's attorney

17   attempted to visit him at MCJ, supporting an inference of a causal connection.  *See Bruce*, 351

18   F.3d at 1288–89; *McCollum*, 647 F.3d at 882.

19        Unlike in *Pratt*, here Defendants Quick, Ramos, Marley and Followill cannot plausibly

20   dispute that they were unaware of the protected First Amendment conduct that Plaintiff alleges

21   prompted their retaliatory conduct.  As Defendants in the *Quick* case, they would have been

22   following closely the developments in that action and promptly learned that their case would be

23   going to trial rather than dismissed at summary judgment.  The fact that four of the Defendants in

24   this case were named as Defendants in the prior suit further supports such an inference of a

25   retaliatory motive.  Accordingly, the Court can reasonably infer based on the timing of their

26   adverse actions toward Plaintiff that they were motivated by retaliation for Plaintiff's ongoing

27   exercise of his First Amendment rights to adequately allege a causal connection at the pleading

28   stage.

1    As to Defendants Rivera and Cortes, however, the FAC does not allege any facts

2    indicating that either Defendant knew of the 2019 lawsuit, and therefore precludes any claim that

3    their actions were motivated by that protected conduct.  *See Corales v. Bennett*, 567 F.3d 554,

4    568 (9th Cir. 2009) (noting that, at summary judgment stage, evidence that a defendant knew of

5    the protected speech is required to sustain a First Amendment retaliation claim); *see also Pratt*,

6    65 F.3d at 808 (reversing district court's grant of preliminary injunction in favor of plaintiff,

7    where there was no basis to infer that defendants were aware of plaintiff's protected First

8    Amendment conduct).  Accordingly, because the FAC does not contain any fact supporting a

9    causal connection between Defendants Rivera and Cortes and Plaintiff's 2019 lawsuit, the

10   undersigned will recommend the First Amendment retaliation claim be dismissed as to

11   Defendants Rivera and Cortes.

12   Defendants next argue that Plaintiff fails to allege any facts showing that his First

13   Amendment rights were chilled as a result of Defendants' conduct.  (Doc. No. 16-1 at 9-10).

14   They note that Plaintiff was able to collect pertinent facts for the instant lawsuit through

15   subsequent conversations with his attorney, refuting an inference that Plaintiff's First Amendment

16   rights were chilled.  (*Id*.).  Plaintiff does not respond to this argument.

17   To satisfy the fourth element of a retaliation claim, a plaintiff "must show that the adverse

18   action either chilled his own First Amendment exercise or would chill that of a person of ordinary

19   firmness." *Garcia*, 2019 WL 2234789 at *10, citing *Brodheim,* 584 F.3d at 1269-1270; *Rhodes*,

20   408 F.3d at 568-569.  A plaintiff need not demonstrate that his First Amendment rights were

21   totally "inhibited or suppressed" because "it would be unjust to allow a defendant to escape

22   liability for a First Amendment violation merely because an unusually determined plaintiff

23   persists in his protected activity."  *Rhodes*, 408 F.3d at 568-569 (citing *Mendocino Envtl. Ctr. v.*

24   *Mendocino Cnty*., 192 F.3d 1283, 1300 (9th Cir. 1999)).  A plaintiff can establish that an action

25   would silence a person of ordinary firmness by showing that the action caused harm that was

26   more than minimal.  *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim*, 584 F.3d

27   1262; *Rhodes*, 408 F.3d at 567, n. 11.  Here, the Court disagrees that Plaintiff has failed to

28   establish the fourth element of a retaliation claim.  Being denied access to one's criminal defense

1  attorney on multiple occasions over several months, particularly when defending against murder

2  charges, constitutes harm that is more than minimal, and therefore would silence a person of

3  ordinary firmness.  The fact that it did not deter Plaintiff in this case from continuing his attempt

4  to contact his attorney does not preclude a finding of retaliation.

5      Thus, the undersigned recommends the District Court deny Defendants' Motion to

6  Dismiss Plaintiff's First Amendment retaliation claim as to Defendants Quick, Ramos, Marley,

7  and Followill but grant the Motion as to Defendants Rivera and Cortes.

8      **2.  Sixth Amendment Access to Counsel Claim Against All Defendants**

9      <u>Applicable Law</u>

10      The Sixth Amendment guarantees a pretrial detainee the right to the effective assistance of

11  counsel at all "'critical' stages in the criminal justice process." *Maine v. Moulton*, 474 U.S. 159,

12  170 (1985) ("[T]o deprive a person of counsel during the period prior to trial may be more

13  damaging than denial of counsel during the trial itself.").  However, "[n]ot every restriction on

14  counsel's time or opportunity to investigate or to consult with his client or otherwise prepare for

15  trial violates a defendant's Sixth Amendment right to counsel." *Morris v. Slappy*, 461 U.S. 1, 11

16  (1983) (citation omitted).

17      As to Plaintiff's Sixth Amendment right to counsel claim, Defendant notes that "the Ninth

18  Circuit has never recognized a cognizable claim for damages under section 1983 for restrictions

19  on the attorney-client relationship in violation of the Sixth Amendment."  (Doc. No. 16-1 at 5-6)

20  (quoting *Yandell v. Washington*, 2021 WL 1907170, at *4 (E.D. Cal. May 12, 2021); *see also*

21  *Bradley v. Health Midwest, Inc.*, 203 F.Supp.2d 1254, 1259 (D. Kan. 2002) (noting court has

22  "been unable to find a single case where the plaintiff was awarded money damages under a §

23  1983 claim for deprivation of the right to counsel" and that "the typical remedy for a violation of

24  the Sixth Amendment right to counsel is that impermissibly obtained evidence is excluded").

25      <u>Analysis</u>

26      Here, Plaintiff's requested relief in this action is limited to various forms of monetary

27  damages.  (*See* Doc. No. 8 at 14).  Plaintiff cites a single case, *Procunier v. Martinez*, 416 U.S.

28  396 (1974), for his assertion that his "claim for damages under section 1983 for violations of his

1    Sixth Amendment right to counsel is well established." (Doc. No. 17 at 8).  However, *Procunier*

2    did not concern the availability of damages in a section 1983 claim brought under the Sixth

3    Amendment; instead, it addressed the constitutionality of two prison regulations, including one

4    that banned the use of law students and paralegals in conducting attorney-client interviews with

5    inmates.  *Procunier*, 416 U.S. at 398.  *Procunier* is thus clearly inapposite here and the

6    uncontroverted authority before the Court holds that Plaintiff cannot pursue damages in a Sixth

7    Amendment right to counsel claim under section 1983.

8         To the extent that Plaintiff asserts a Sixth Amendment claim for ineffective assistance of

9    counsel, Defendants contend this is likewise unavailable because such an action can only be

10   brought in a *habeas corpus* proceeding or on direct appeal.  (Doc. No. 16 at 9) (citing *U.S. v.

11   Ross*, 206 F.3d 896, 900 (9th Cir. 2000) and *U.S. v. Nickerson*, 556 F.3d 1014, 1018 (9th Cir.

12   2009)).  The Court agrees.  The effectiveness of counsel cannot be determined at this stage of

13   Plaintiff's criminal proceedings, where there is no record as to "what counsel did, why it did what

14   was done and what, if any, prejudice resulted."  *U.S. v. Pope*, 841 F.2d 954, 958 (9th Cir. 1988).

15   Plaintiff cites several cases, such as *Estelle v. Ruiz*, 503 F.Supp. 1265 (S.D. Tex. 1980), that

16   support an inmate's general right to counsel, however the authorities cited do not support that

17   Plaintiff can proceed on an ineffective assistance of counsel claim at this stage.  Therefore, to the

18   extent Plaintiff asserts a Sixth Amendment ineffective assistance of counsel claim, the

19   undersigned recommends it be dismissed by the District Court.

20        Even assuming Plaintiff can proceed under either of these theories, the Court agrees with

21   Defendants that Plaintiff has not established a cognizable injury to support a Sixth Amendment

22   access to counsel claim.  Plaintiff insists that the delay in his criminal matter that resulted from

23   his inability to meet with his defense attorney from September-December 2022 may cause

24   further, unanticipated harms, and that "timing, finding witnesses, documents and the investigation

25   and the whole process of criminal trial when stalled, hindered or otherwise illegally without just

26   cause has the potential to effect [sic] a criminal trial and such." (Doc. No. 17 at 11-12).  Beyond

27   these vague and "potential" harms, Plaintiff does not, however, point to any concrete harm that

28   has resulted from his inability to meet with his counsel for roughly 3.5 months.  The fact that

12

Plaintiff's attorney was forced to request a continuance of the case does not establish a cognizable injury.  *See Cunningham v. Blades*, 2006 WL 292087, at *1 (D. Idaho Feb. 7, 2006) (a delay in plaintiff's criminal case was not an actual injury); *see also Funtanilla v. Duke-Bray*, 1999 WL 9921, at *2 (N.D. Cal. Jan. 6, 1999) (delay of plaintiff's civil jury trial "does not amount to an actual injury where plaintiff does not allege, for example, that his civil action was dismissed or he suffered some other sanction as a result of the delay"), aff'd, 203 F.3d 830 (9th Cir. 1999); *Vitasek v. Maricopa County Sheriff's Office*, 2012 WL 176313, at *6 (D. Ariz. Jan. 23, 2012) (ruling at summary judgment that the prisoner plaintiff failed to show an actual injury when an approximately one-month delay in a court hearing resulted in longer jail detention).  Accordingly, the undersigned recommends the Sixth Amendment claims be dismissed for the additional reason that Plaintiff fails to establish any concrete injury from the restrictions on his access to counsel.

### 3.  First Amendment Right to Communication with Counsel Against All Defendants

Applicable Law

The First Amendment guarantee of access to the courts affirmed in *Bounds v. Smith*, 430 U.S. 817, 821 (1977) also guarantees a pretrial detainee "meaningful access to the courts" including the opportunity to communicate privately with defense counsel and contact visits. *Ching v. Lewis*, 895 F.2d 608, 609-10 (9th Cir. 1990).  Indeed, "[a] criminal defendant's ability to communicate candidly and confidentially with his lawyer is essential to his defense" and "nearly sacrosanct." *Nordstrom v. Ryan*, 762 F.3d 903, 910 (9th Cir. 2014).  "This right is not absolute, however; like other rights of pretrial detainees, the right to contact visits may be denied for legitimate reasons." *Yandell*, 2021 WL 1907170 at *3, citing *Block v. Rutherford*, 468 U.S. 576, 585-89 (1984); *United States v. Salerno*, 481 U.S. 739, 747 (1987).  Denying an inmate contact visits with his attorney without providing any legitimate rationale constitutes an "arbitrary policy . . . [that] prohibits effective attorney-client communication and unnecessarily abridges the prisoner's right to meaningful access to the courts." *Ching*, 895 F.2d at 610.

Analysis

Here, Defendants argue that Plaintiff's First Amendment claim fails, first, because Plaintiff's communication with his defense counsel was not chilled.  They contend the evidence

13

1  shows that Plaintiff was in communication with his counsel shortly after the last time the attorney

2  was denied entry to MCJ on December 2022; indeed, he relied on those conversations for the

3  allegations contained in his initial Complaint, filed in January 2023.  (Doc. No. 16-1 at 9).

4  Further, Defendants assert that with the exception of Defendant Quick, there is no evidence of

5  intent to deter Plaintiff's speech because the remaining Defendants were simply following

6  Quick's orders to deny access to Plaintiff's attorney and did not give any reason for the denials.

7  (*Id*. at 8, 10).

8        As an initial matter, the Court is not persuaded that Defendants address Plaintiff's First

9  Amendment claim under the proper standard.  They cite to *Mendocino Environmental Center vs.*

10 *Mendocino County*, 192 F.3d 1283 (9th Cir. 1999), which is a First Amendment free speech case,

11 and *Hayes v. Idaho Correctional Center*, 849 F.3d 1204 (9th Cir. 2017), a First Amendment

12 access to legal mail case, for the proposition that Plaintiff must allege a chilling effect from

13 Defendants' conduct and that Defendants had a "specific, subjective intent to inhibit" Plaintiff's

14 speech.  (Doc. No. 16-1 at 9).  Although admittedly muddled, the Court construes Plaintiff's

15 remaining First Amendment claim as premised on the right to access the courts, rather than on his

16 right to confidential communications with counsel[9], thus the critical question is whether

17 Plaintiff's First Amendment right to access the courts has been abridged.

18
19
20
21

> [A]ccess to the courts means the opportunity to prepare, serve and file whatever pleadings or other documents are necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty, or to assert and sustain a defense therein, and to send and receive communications to and from judges, courts and lawyers concerning such matters.

22 *Lewis v. Casey,* 518 U.S. 343, 384 (1996) (Thomas, J., concurring).

23        At the motion to dismiss stage, the Court must accept as true Plaintiff's allegations that he

24 was denied contact visits with his attorney on seven occasions and that Defendants provided no

25 justification for the denial.  (Doc. No. 8 at 4-5).  Defendants do not dispute that the denials were

26 made without providing any reason, nor do they attempt now to provide any reasons for the

27 _____

28 [9] This theory was raised separately in Plaintiff's now-dismissed claims regarding the monitoring of his phone calls to counsel.

denials.  (Doc. No. 16-1 at 8).  Arbitrary denials of the fundamental right to communicate with counsel, unrelated to institutional security or any other legitimate penological purpose, violate the First Amendment.  *Ching*, 895 F.2d at 610.  Accepting Plaintiff's allegations as true, Defendants' denials of access to Plaintiff's attorney were without any legitimate penological justification and thus violated his First Amendment rights.  Further, it is well-settled that "[s]ubordinate police officers cannot escape liability when they blindly follow orders."  *Baude v. Leyshock*, 23 F.4th 1065 (8th Cir. 2022); *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004) ("since World War II, the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a reason why any of them should question the validity of that order); *Blake v. California Dep't of Correction*, 2022 WL 20356985, at *5 (C.D. Cal. Mar. 31, 2022) (collecting cases).  Thus, the fact that subordinates of Defendant Quick were merely following his orders is not a complete defense to any constitutional claim, which the FAC otherwise adequately alleges against all Defendants.  Accordingly, the undersigned recommends the District Court deny Defendants' Motion as to Plaintiff's First Amendment access to courts/communication with counsel claim.

### 4.  Equal Protection Under the Fourteenth Amendment Against All Defendants

<u>Applicable Law</u>

"No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The Equal Protection Clause requires the State to treat all similarly situated people equally."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013).  There are two different ways in which a plaintiff may state an equal protection claim.  A plaintiff's first option is to allege "facts plausibly showing that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class[.]"  *Id.* (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)).  The second way a plaintiff may state a claim is "as a 'class of one' by alleging that [the] plaintiff has 'been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment[.]"  *Koboyashi v. McMulling*, 2022 WL 3137958, at *23 (C.D. Cal. May 31, 2022) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

To succeed on his "class of one" claim, Plaintiff must allege that Defendants: (1) intentionally (2) treated him differently than other similarly situated inmates, (3) without a rational basis.  *See Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

<u>Analysis</u>

Here, Plaintiff's equal protection claim appears to rest on his assertion that "Defendants treated him differently than other prisoners in their facility . . . [because] during the said time, that his attorney was denied the opportunity to enter into the facility, other attorneys were allowed to visit with clients in his module."  (Doc. No. 8 at 13).  Liberally construed, Plaintiff asserts that he was treated differently than other similarly situated inmates.  However, Defendants contend that courts consistently reject "class-of-one" claims challenging highly-discretionary decisions of prison officials, such as the ones Plaintiff challenges here.  (Doc. No. 16-1 at 11-12), citing *Reed v Corizon, L.L.C*., 2016 WL 11622033, at *6 (D. Ariz. June 22, 2016) (collecting cases).  Indeed, as the Supreme Court stated in *Engquist vs. Oregon Dept. of Agriculture*:

> [t]here are some forms of state action . . . which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.  In such cases the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted.

553 U.S. 591, 602 (2008).  Defendants argue that the decision whether to admit Plaintiff's attorney on each of the occasions cited "involved discretionary decision making . . . such as, whether the inmate was available at the time, staffing and/or security needs, or whether the attorney followed the Jail's visitor policy."  (Doc. No. 16-1 at 12).  While the Court has limited information on which to assess the degree of discretion applicable to Defendants' challenged actions,[10] it can reasonably infer that the decisions involved substantial discretion, and thus do not lend themselves to a "clear standard against which departures . . . could be readily assessed." *Engquist*, 553 U.S. at 602.  The Court thus agrees that following *Engquist*, Plaintiff cannot challenge these decisions based on a "class-of-one" theory.

---

[10] The FAC describes in general terms the procedure involved in admitting visiting attorneys but not any criteria involved in deciding whether to admit an attorney at a given time.  (*See* Doc. No. 8 at 4).

16

Even assuming such a claim is cognizable, Plaintiff does not allege any facts to support his assertion that other detainees who were able to meet with their attorneys at MCJ on the days that his attorney was denied access are similarly situated to him.  The mere fact that Plaintiff and the other individuals are pretrial detainees does not necessarily make them similarly situated.  *See SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022) ("a class-of-one plaintiff should be similar to the proposed comparator in all 'relevant' or 'material' respects); *see also Gianfrancesco v. Town of Wrentham*, 712 F.3d 634, 640 (1st Cir. 2013) ("[A] class-of-one plaintiff bears the burden of showing that his comparators are similarly situated in all respects relevant to the challenged government action.").  Here, Plaintiff does not allege any similarity between himself and the other pretrial detainees, other than the fact of their being in custody at the same institution.  This is insufficient to set forth a "class-of-one" equal protection claim.  Accordingly, the undersigned recommends the District Court deny Plaintiff's Fourteenth Amendment equal protection claim.

### B.  Qualified Immunity on Sixth and Fourteenth Amendment Claims

A government official is entitled to qualified immunity under Section 1983 unless (1) the official "violated a federal statutory or constitutional right, and (2) the unlawfulness of his conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).  To demonstrate that a right was "clearly established" requires a showing that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful.  *Wesby*, 583 U.S. at 63; *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018).

This standard is "demanding" and protects "all but the plainly incompetent or those who knowingly violate the law."  *Wesby*, 583 U.S. at 63 (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  "[A] court typically should identify a case where an officer acting under similar circumstances as [the defendant] was held to have violated the constitutional right at issue."  *S.B v. County of San Diego*, 864 F.3d 1010, 1015 (9th Cir. 2017)).  "Even when no case is 'directly on point,' courts may compare relevant factors to determine whether every reasonable officer

1    should have known the conduct in question was unlawful." *Anderson v. Virga*, 2018 WL

2    1556806, *2 (E.D. Cal. Mar. 30, 2018) (citing *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d

3    938, 946-47 (9th Cir. 2017).  The plaintiff bears the burden of establishing that the right alleged

4    was clearly established.  *Moran v. Washington*, 47 F.3d 839, 844 (9th Cir. 1998).

5         As discussed above, Plaintiff fails to adequately allege Sixth and Fourteenth Amendment

6    claims against Defendants Marley, Quick, Followill, Cortes, Ramos, and Rivera.  Thus, the Court

7    need not reach Defendants' qualified immunity argument as to those claims.  However,

8    Defendants argue that even if they violated Plaintiff's constitutional rights, they are entitled to

9    qualified immunity on Plaintiff's Sixth and Fourteenth Amendment claims because during the

10   relevant time, it was not clearly established that Plaintiff could pursue a Sixth Amendment right

11   to counsel claim for damages under section 1983, nor that he could proceed on a Fourteenth

12   Amendment equal protection "class of one" claim regarding "highly discretionary" correctional

13   decisions.[11]  (Doc. No. 16 at 15-17).

14        In his Opposition, Plaintiff does not address qualified immunity in any depth, stating only

15   that "[n]o immunity should be granted to any of the Defendants for their training found that their

16   conduct in this action violates "well-established statutory or constitutional rights which a

17   reasonable person would have known."  (Doc. No. 17 at 14).  For reasons set forth below, the

18   Court agrees with Defendants that they are entitled to qualified immunity.

19        In his Opposition to the Motion to Dismiss, Plaintiff does not "point to any precedent

20   from the Supreme Court, [the Ninth Circuit], or 'a robust consensus of cases of persuasive

21   authority" showing that a reasonable correctional officer would know that arbitrarily denying a

22   pretrial detainee's criminal defense counsel's requests for contact visitation would violate the

23   detainee's Sixth Amendment right to counsel.  Indeed, while such conduct has been found to

24   violate the First Amendment right to access the courts, *see Ching*, 895 F.2d at 610, the Court is

25   not aware of any such well-established consensus of cases finding such conduct violates the Sixth

26

27   [11] The Court finds Defendants' framing of the relevant rights somewhat misleading.  The question is not
     whether Defendants knew that Plaintiff's claims might be barred by particular legal doctrines, but whether
     a reasonable government official would have been aware they were violating Plaintiff's constitutional or
28   statutory rights.

1   Amendment.  Nor does Plaintiff point to any relevant precedent establishing that reasonable

2   correctional officials would have known that denying a pretrial detainee contact visits while

3   permitting them for certain other detainees violates his equal protection rights.  Because, as

4   discussed above, such decisions involve a substantial amount of discretion and depend on factors

5   specific to each individual detainee, a reasonable correctional official would not have believed

6   that denying a request as to a particular detainee *ipso facto* violated his Fourteenth Amendment

7   equal protection rights.

8          Thus, Plaintiff has failed to meet his burden of disputing Defendants' entitlement to

9   qualified immunity.  *See Moran*, 47 F.3d at 844.  Accordingly, the Court finds that Defendants

10  are entitled to dismissal on Plaintiff's Sixth and Fourteenth Amendment claims on the additional

11  grounds of qualified immunity.

12         **C.  Whether Leave to Amend Should be Granted**

13         If a motion to dismiss is granted, "[the] district court should grant leave to amend even if

14  no request to amend the pleading was made . . ."  *Henry A. v. Willden*, 678 F.3d 991, 1005 (9th

15  Cir. 2012).  However, leave to amend need not be granted if amendment would be futile or if the

16  plaintiff has failed to cure deficiencies despite repeated opportunities.  *See Mueller v. Aulker*, 700

17  F.3d 1180, 1191 (9th Cir. 2012); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir.

18  2010).

19         Here, Plaintiff has already been afforded an opportunity to amend his complaint.  (*See*

20  Doc. Nos. 1, 8).  Plaintiff has articulated the facts surrounding his alleged violations in ample

21  detail and the Court can discern no set of additional facts that could be alleged to cure the

22  deficiencies identified here.  As the analysis above reflects, some of Plaintiff's claims are simply

23  barred as a matter of law.  Moreover, because the Court finds that Defendants are entitled to

24  qualified immunity on the Sixth and Fourteenth Amendment claims, there are no additional facts

25  Plaintiff could plead that could cure this deficiency.  *See Reed v. Nevada*, 2021 WL 3722879, at

26  *4 (D. Nev. Aug. 23, 2021) (finding leave to amend futile where defendants entitled to qualified

27  immunity).  Thus, the Court finds that granting Plaintiff further leave to amend would be futile.

28  ////

ACCORDINGLY, it is **ORDERED**:

Defendants' Motion for Judicial Notice (Doc. No. 16-2) is **GRANTED,** and the Court takes judicial notice of the following cases:

    1. *Jackson v. Quick, et al*. Case No. 1:19-cv-01591-EPG.

    2. *Jackson v. Khalib, et al*. Case No. 1:20-cv-01567-KES-SKO

    3. *Jackson v. County of Madera, et al*. Case No. 1:22-cv-00069-ADA-EPG

    4. *Jackson v. Perez et al*. Case No. 1:24-cv-00034-KES-HBK

    5. *Jackson v. Rivera et al*. Case No. 1:24-cv-00261-KES-BAM

    6. *Jackson v. Pouge et al*. Case No. 1:24-cv-00585-JLT-EPG

It is further **RECOMMENDED**:

1. Defendants' Motion to Dismiss (Doc. No. 16) be **GRANTED IN PART** with respect to Plaintiff's Sixth Amendment right to counsel claim, his Fourteenth Amendment equal protection claim, and his First Amendment retaliation claim as to Defendants Cortes and Rivera.

2. Defendants' Motion to Dismiss (Doc. No. 16) be **DENIED** with respect to Plaintiff's First Amendment right to counsel/access to courts claim and First Amendment retaliation claim as to Defendants Quick, Ramos, Marley, and Followill.

**NOTICE TO PARTIES**

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id*.; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen (15) pages**.  The Court will not consider exhibits attached to the Objections.  To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. §

20

636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated:     November 26, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE